IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| NOLVIA HERNANDEZ VASQUEZ, )<br>    Plaintiff, )<br> )<br>v. )<br> )<br> )<br>ALEJANDRO MAYORKAS, Secretary )<br>of the United States Department of )<br>Homeland Security, <u>et al.</u>, )<br>    Defendants. ) | Civil No. 5:20-cv-00025<br><br>By:   Michael F. Urbanski<br>Chief United States District Judge |

## <u>MEMORANDUM OPINION</u>

This matter is before the court on then-defendants'—Chad Wolf, former Acting Secretary of the U.S. Department of Homeland Security (DHS); Mark Koumans, former Acting Director of U.S. Citizenship and Immigration Services (USCIS); and Donald Neufeld, former Associate Director of Service Center Operations—motion to dismiss, ECF No. 14. These three individuals no longer hold these public offices. Pursuant to Federal Rule of Civil Procedure ("Rule") 25(d),[1] they have been automatically substituted by Alejandro Mayorkas, Secretary of DHS; Ur M. Jaddou, Director of USCIS; and Connie Nolan, Acting Associate Director of Service Center Operations Directorate (collectively "the defendants"). Plaintiff Nolvia Hernandez Vasquez opposes the motion to dismiss, ECF No. 19, and the defendants'

---

[1] The rule states:

(d) Public Officers; Death or Separation from Office. An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded. The court may order substitution at any time, but the absence of such an order does not affect the substitution.

Fed. R. Civ. P. 25(d).

1

filed a reply, ECF No. 20. For the reasons explained herein, the defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

### A. Statutory and Regulatory Framework

The Immigration and Nationality Act ("INA") "provides the executive branch broad authority" to admit aliens into the United States and establish conditions for admission. Gonzalez v. Cuccinelli, 985 F.3d 357, 362 (4th Cir. Jan. 14, 2021) (citing Pub. L. No. 82-414, § 101, 66 Stat. 163 (1952) (codified as amended at 8 U.S.C. § 1101)). The INA charges the Secretary of DHS with the administration and enforcement of the INA, along with "all other laws relating to the immigration and naturalization of aliens," and dictates that the Secretary "shall establish such regulations…as he deems necessary for carrying out his authority under the provisions of this chapter." 8 U.S.C. § 1103(a). The Secretary has delegated much of this authority to USCIS. See 8 C.F.R. § 2.1; see also 6 U.S.C. § 112(b)(1) (authorizing such a delegation).

Through this delegation, USCIS is responsible for administering the U-Visa program which, if granted, provides certain immigration protections and privileges, including work authorization, to eligible aliens who are victims of serious crime and cooperate with law enforcement. See 8 C.F.R. § 214.14(c)(1) (delegating authority to USCIS); 8 U.S.C. § 1101(a)(15)(U) (outlining statutory eligibility criteria). Congress established the program in 2000 and capped the number of U-Visas that can be issued at 10,000 per fiscal year. See 8 U.S.C. § 1184(p). In 2005, Congress amended the program "and directed the Secretary of [DHS] to promulgate regulations implementing the statutory U-Visa provisions." Cuccinelli,

2

985 F.3d at 362 (citing Pub. L. 109-162, 119 Stat. 2960 (2006)). USCIS, through its delegated authority, promulgated these regulations, which provide the framework for the U-Visa program today. Cuccinelli, 985 F.3d at 362–63 (citing relevant regulations).

An alien must file a petition with USCIS to apply for a U-Visa. 8 U.S.C. § 1101(a)(15)(U)(i); 8 C.F.R § 214.14(c)(1).

> An alien qualifies if the Secretary of Homeland Security (and USCIS as his designee) determines that the alien: (1) "has suffered substantial physical or mental abuse as a result of having been a victim of criminal activity"; (2) "possesses information concerning [the] criminal activity"; (3) "has been helpful, is being helpful, or is likely to be helpful to [government officials] investigating or prosecuting [the] criminal activity"; and (4) the criminal activity is a covered offense that "violated the laws of the United States or occurred in the United States…or the territories and possessions of the United States."

Cuccinelli, 985 F.3d at 363 (citing 8 U.S.C. §§ 1101(a)(15)(U)(i)(I)–(IV); 8 U.S.C. § 1101(a)(15)(U)(iii) (listing covered offenses)). "The petitioning alien must also be generally 'admissible' or must obtain a discretionary waiver of inadmissibility from USCIS." Cuccinelli, 985 F.3d at 363 (citing 8 U.S.C. § 1182(a); 8 C.F.R. § 214.1(a)(3)(i); 8 C.F.R. § 214.14(c)(2)(iv); 8 U.S.C. § 1182(d)(3)(A)(ii), (d)(14); 8 C.F.R. § 212.17).

Given the statutory cap, an alien is not automatically issued a U-Visa if USCIS approves their petition. "[F]ar more than 10,000 aliens seek U-Visas [each year]. As a result, there is a significant gap between U-Visa petitions that meet the eligibility criteria and petitions that the agency may grant…." Cuccinelli, 985 F.3d at 363. Given this gap, DHS instructed that aliens whose petitions are approved "must be placed on a waiting list" with "[p]riority on the waiting list…determined by the date the petition was filed." 8 C.F.R. § 214.14(d)(2) ("the oldest petitions receiving the highest priority," with some exceptions not at issue in this case). Once

on the waiting list, USCIS will not initiate removal proceedings against the alien, also known as "deferred action," and USCIS may, in its discretion, provide work authorization.[2] Id.

In 2008, Congress amended the U-Visa program again to, among other things, give the Secretary of DHS the express authority to "grant work authorization to any alien who has a pending, bona fide application." See Pub. L. 110-457, 122 Stat. 5044 (codified at 8 U.S.C. § 1184(p)(6)). At the time, DHS was already granting work authorizations to aliens on the waiting list under its inherent authority. After the amendment, DHS could, in its discretion, grant work authorizations for petitioners who had not yet been placed on the waiting list but had a bona fide application pending.

The Fourth Circuit, in reviewing nearly identical claims, summarized this "three-tiered structure for aliens seeking a U-Visa" as follows:

> First, if an alien has not been granted a U-Visa or been placed on the waiting list, then the agency provides neither discretionary nor mandatory immigration status or work authorizations. Second, if an alien is eligible for U-Visa status but cannot be awarded a visa because of the statutory cap, that alien must be placed on the waiting list and is then entitled to deferred action and may be granted work authorization. See 8 C.F.R. § 214.14(d)(2); see also 8 C.F.R. § 274a.12(c)(14). And third, if an alien is granted U-Visa status, then the alien is entitled to temporary lawful residency and must be granted work authorization.

Cuccinelli, 985 F.3d at 364 (emphasis in original) (citing 8 U.S.C. § 1184(p)(3)(B); 8 C.F.R. § 214.14(c)(7)).

### B. Hernandez Vasquez's Petition

Plaintiff is a native and citizen of Honduras who, at the time she filed her complaint in April 2020, was 31 years old. Compl., ECF No. 1, at ¶ 3. Plaintiff entered the United States

---

[2] In general, federal law prohibits hiring or employing "unauthorized aliens." 8 U.S.C. § 1324a.

4

"without inspection" in 2009 and has not left since. Id. at ¶ 11. On December 17, 2015, Plaintiff was hit by a drunk driver on U.S. 250 in Augusta County, Virginia. Id. at ¶ 12; Death Certificate and Articles, ECF No. 1-4, at 2. Tragically, Plaintiff's five-year-old son was killed in the accident. See Death Certificate and Articles, ECF No. 1-4, at 2. Plaintiff's ankle was crushed, her lung collapsed, and she "has suffered substantial psychological harm in the form of emotional pain, in the loss of her only child." Compl., ECF No. 1, at ¶¶ 12–13. Plaintiff cooperated with the police investigation and the drunk driver was sentenced to 10.5 years in prison for aggravated involuntary manslaughter and driving under the influence. Id. at ¶ 15 (citing Man gets 10 years for death of Waynesboro boy, ECF No. 1-5, at 1–2).

Plaintiff filed a petition for a U-Visa, also known as a I-918, on June 21, 2016. See U-Visa Petition, ECF No. 1-2. USCIS, through its Vermont Service Center, confirmed its receipt of her application on June 30, 2016. See I-918 Notice of Action, ECF No. 1-3. That same day, Plaintiff also submitted a companion application for advance permission to enter as a nonimmigrant, also known as a I-192, which she describes as an application to pardon her unlawful entry and presence in the United States. Compl., ECF No. 1, at ¶ 18 (citing I-192 Notice of Action, ECF No. 1-6). USCIS instructs aliens to "[u]se this form if you want to apply for advance permission to temporarily enter the United States and you are an…[a]pplicant for T or U nonimmigrant status."[3] As the court reads Plaintiff's complaint and opposition to the motion to dismiss, Plaintiff considers the I-192 as part of her U-Visa adjudication and is not bringing any claims specifically related to her I-192 adjudication.

---

[3] I-192, Application for Advance Permission to Enter as a Nonimmigrant, USCIS (last accessed Sept. 3, 2021) https://www.uscis.gov/i-192.

5

Plaintiff was subsequently "requested to submit her biometrics to the USCIS on August 10, 2016," and did so. Compl., ECF No. 1, at ¶ 20. She has not received any further information since then. Id. at ¶ 21. As far as the court is aware, her application is still pending.[4]

On April 3, 2020, Plaintiff filed her "original complaint for writ of mandamus and declaratory judgment," which includes one count of action but seeks eight types of relief, requesting the court to: (1) issue a writ of mandamus ordering DHS to make a determination as to whether Plaintiff is eligible for a U-Visa; (2) enjoin the defendants from further delaying adjudication of her "application"; (3) declare that DHS's failure to process her petition violates the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(1); (4) order DHS to make a determination in her case under the same regulation; (5) declare that USCIS has not determined whether or not she should be placed on the waiting list for a U-Visa within a reasonable amount of time, in violation of the APA, 5 U.S.C. § 555(b); (6) order USCIS to "make a 'waiting list' adjudication on Plaintiff's application, permitting her to apply for lawful employment authorization"; (7) grant such other relief as the court deems proper; and (8) grant her attorney's fees and costs. Compl., ECF No. 1, at 16–17.

The defendants move to dismiss Plaintiff's complaint under Rule 12(b)(1), arguing that the court lacks subject matter jurisdiction to review discretionary agency actions. See Mem. in Support of Mot. to Dismiss ("Mot. to Dismiss"), ECF No. 15., at 10–18. Alternatively, they argue that Plaintiff has failed to state a claim under Rule 12(b)(6). See id. at 18–23.

---

[4] USCIS's online tracker does not recognize Hernandez Vasquez's U-Visa petition number. See Case Status Online, USCIS (last accessed Sept. 3, 2021) https://egov.uscis.gov/casestatus/mycasestatus.do (search "EAC1619751793"). It does recognize the number associated with her companion I-192, but only notes that her fees were waived. See id. (search "EAC1619751805").

## II.     LEGAL STANDARD

### A.     Rule 12(b)(1)

A party may move to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). A defendant can challenge subject matter jurisdiction in two ways: facially or factually. Beck v. McDonald, 848 F.3d 262, 270 (4th Cir. 2017).

A facial challenge asserts "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." Id. (quoting Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). When a defendant makes a facial challenge to the court's jurisdiction, the plaintiff is "'afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration.'" Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009) (quoting Bain, 697 F.3d at 1219). In other words, the court assumes the truth of the facts alleged and asks if those facts make plausible the conclusion that the court has jurisdiction. See id. at 193; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).

Conversely, when a defendant challenges the factual basis of plaintiff's jurisdictional allegations, "the trial court may go beyond the complaint, conduct evidentiary proceedings, and resolve the disputed jurisdictional facts." Kerns, 585 F.3d at 193. In such situations, the facts of the plaintiff's jurisdictional allegations are not assumed true, the burden of proof is on the plaintiff, and the court may weigh evidence outside the pleadings, such as testimony and affidavits, to determine whether it has jurisdiction. Adams, 697 F.2d at 1219.

### B.     Rule 12(b)(6)

Under Rule 12(b)(6), a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. At this stage, the court must accept as true all well-

7

pleaded allegations and draw all reasonable factual inferences in the plaintiff's favor. Erickson v. Pardus, 551 U.S. 89, 94 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation and quotation marks omitted). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

### C. Review of Agency Inaction Under the APA and the All Writs Act

The APA authorizes suit by "[a] person suffering [a] legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. "[A]gency action" includes "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13) (emphasis added). The APA dictates that agencies "shall proceed to conclude a matter presented to it" "within a reasonable time." 5 U.S.C. § 555(b). If an agency fails to act, the court shall "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); see also 28 U.S.C. § 1331 (providing federal district courts with subject matter jurisdiction over APA claims).

However, the court's "authority to compel agency action that has been unlawfully withheld or unreasonably delayed has limits." Cuccinelli, 985 F.3d at 365. Courts cannot review agency action or inaction when "agency action is committed to agency discretion by law." 5

U.S.C. § 701(a)(2); see also Heckler v. Chaney, 470 U.S. 821, 831–33 (1985); Cuccinelli, 985 F.3d at 365. Under the Supreme Court's decision in Norton v. S. Utah Wilderness Alliance, a claim under 5 U.S.C. § 706 "can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." 542 U.S. 55, 64 (2004) (emphasis in original). "Where an agency 'fails to take a discrete agency action that it is required to take,' the APA creates a private cause of action for a party aggrieved by that agency's unreasonable delay to compel such action." Fed. Energy Regul. Comm'n v. Powhatan Energy Fund, LLC, 949 F.3d 891, 903 (4th Cir. 2020) (emphasis omitted) (quoting Norton, 542 U.S. at 64). "But where an agency is not required to do something, [the court] cannot compel the agency to act—let alone to act faster." Cuccinelli, 985 F.3d at 366 (emphasis in original) (citing Norton, 542 U.S. at 63 n.1).

The All Writs Act codified "[t]he common-law writ of mandamus." South Carolina v. United States, 907 F.3d 742, 754 (4th Cir. 2018). "To succeed on a petition for a writ of mandamus, the petitioner must show, among other things, that 'the respondent had a clear duty to do the particular act requested by the petitioner.'" Cuccinelli, 985 F.3d at 374 n.9 (citing In re First Fed. Sav. & Loan Ass'n of Durham, 860 F.2d 135, 138 (4th Cir. 1988)).

### III. ANALYSIS

#### A. Hernandez Vazquez's U-Visa Petition

The defendants argue that "Congress did not prescribe a particular time limit within which U nonimmigrant adjudications must be completed," and, therefore, the pace of adjudication is discretionary and unreviewable. See Mot. to Dismiss, ECF No. 15, at 12; see also id. at 11 (collecting cases supporting assertion that the pace of adjudication is

9

discretionary). Roughly two months the defendants filed their motion, the Fourth Circuit ruled in a nearly identical case, Gonzalez v. Cuccinelli, that these types of claims are reviewable. 985 F.3d at 374 n.10. The court found that "the agency has committed itself by regulation to place eligible applicants on the waiting list," and, therefore, its actions were not discretionary. Id. (citing 8 C.F.R. § 214.14(d)(2) ("[a]ll eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status must be placed on a waiting list" (emphasis added))).[5]

The Supreme Court has not provided clear guidance for determining when agency action is unreasonably delayed, but most lower courts, including the Fourth Circuit, use the D.C. Circuit's six-factor test outlined in TRAC v. FCC, 750 F.2d 70, 80 (D.C. Cir. 1984), which includes the following considerations:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

---

[5] The Fourth Circuit did not specifically address whether the pace of adjudications was discretionary or not, but the court's holding closes the question. And, logically, if the agency has committed itself to action and the APA enables a court to compel such action "unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), the agency cannot evade this requirement by arguing that the pace of its actions is discretionary.

TRAC, 750 F.2d at 80 (internal citations omitted). In applying the TRAC factors in Cuccinelli, the Fourth Circuit advised that district courts are not limited to these factors nor required to apply them, but this court agrees that they are "helpful guidance." Cuccinelli, 985 F.3d at 375.

Ultimately, the Cuccinelli court held that, on the record before it, it "lack[ed] sufficient information to resolve this issue on a motion to dismiss." Id. at 375. While the defendants' "first in, first out" approach "may be a rule of reason" and their actions could be reasonable in light of "resource constraints," the court did "not known enough about how the agency implements its rules and exceptions" nor its competing priorities.[6] Id. By contrast, the plaintiffs had "pled sufficient facts to show that their interests are weighty, implicate health and welfare, and are harmed by the long wait." Id. For these reasons, the Fourth Circuit vacated the district court's dismissal and remanded for further proceedings. Id. at 376. In doing so, it advised that "[a] claim of unreasonable delay is necessarily fact dependent and thus sits uncomfortably at the motion to dismiss stage and should not typically be resolved at that stage." Id. at 375.

The defendants have not demonstrated that a different result is warranted here. Plaintiff has pled sufficient facts to show that the agency's delay implicates weighty interests related to her health and welfare. See generally Compl., ECF No. 1. In their motion, the defendants explain that "[t]he number of U visa petitions has greatly increased since the inception of the program, and far exceeds the anticipated number of filings." Mot. to Dismiss,

---

[6] The Fourth Circuit made clear that "courts generally 'have no basis for reordering agency priorities.'" Id. at 375–76 (citing In re Barr Lab'ys, Inc., 930 F.2d 72, 76 (D.C. Cir. 1991); see also Blanco de Belbruno v. Ashcroft, 362 F.3d 272, 280 (4th Cir. 2004) (noting that when an agency faces "a backlog of tens of thousands of cases," it "operates in an environment of limited resources, and how it allocates those resources to address the burden of increasing claims is a calculation that courts should be loathe to second guess").

11

ECF No. 15, at 3. At the time they filed their motion, there were over 151,000 pending petitions. Id. at 3–4.[7] In 2020, the average processing time for a U-Visa petition was 54.3 months.[8] Plaintiff's petition has been pending for over 62 months. See I-918 Notice of Action, ECF No. 1-3. The defendants explained that USCIS has taken steps to address backlog, including opening a new service center in 2016. Mot. to Dismiss, ECF No. 15, at 4–5. These numbers are compelling and the defendants may ultimately prevail on this argument, but, like in Cuccinelli, "at this point we cannot rely on the agency's allegations to find as a matter of law that this factor necessarily favors the agency." 985 F.3d at 376. For these reasons, the defendants' motion to dismiss plaintiff's claims regarding the delayed adjudication of her U-Visa petition must be denied.

### B. Hernandez Vasquez's Request for Work Authorization

By contrast, in Cuccinelli, the Fourth Circuit made clear that "under Norton [DHS] is not required to implement or adjudicate pre-waiting-list work authorizations and so its failure to adjudicate Plaintiff['s] request[] in a timely manner is unreviewable." 985 F.3d at 371. The court explained this conclusion in great detail, addressing many arguments not raised here. In short, 8 U.S.C. § 1184(p)(6) gave the Secretary of DHS has the express authority to "grant work authorization to any alien who has a pending, bona fide application" in its discretion,

---

[7] For this data, the defendants rely on a chart available online in PDF format. See Mot. to Dismiss, ECF No. 15, at 4 n.1 (citing USCIS, Number of Form I-918, Petition for U Nonimmigrant Status, By Fiscal Year, Quarter, and Case Status Fiscal Years 2009-2019 (last visited Sept. 3, 2021) https://www.uscis.gov/sites/default/files/document/data/I918u_visastatistics_fy2019_qtr4.pdf. The defendants noted that this court may take judicial notice of this chart and other information available on USCIS websites cited throughout their motion. Mot. to Dismiss, ECF No. 15, at 4 n.1 (citing United States v. Garcia, 855 F.3d 615, 621 (4th Cir. 2017) (affirming district court's taking of judicial notice of facts stated on USCIS website, stating, "the USCIS website is a source whose accuracy cannot reasonably be questioned")).

[8] USCIS, Historical National Median Processing Time (in Months) for All USCIS Offices for Select Forms By Fiscal Year (last visited Sept. 3, 2021), https://egov.uscis.gov/processing-times/historic-pt.

but it does not require the Secretary to do so. Supreme Court precedent makes clear that a claim under 5 U.S.C. § 706 "can proceed only where a plaintiff asserts that an agency failed to take a <u>discrete</u> agency action that it is <u>required to take</u>." <u>Norton</u>, 542 U.S. at 64 (emphasis in original). Because the relevant agency action is discretionary and, therefore, not one the agency is "required to take," <u>id.</u>, the court lacks authority to "compel the agency to act—let alone to act faster." <u>Cuccinelli</u>, 985 F.3d at 366.[9]

Like the plaintiffs in <u>Cuccinelli</u>, 985 F.3d at 371–74, Plaintiff argues that the defendants were required to adjudicate her work-authorization request in 90 days under a former regulation, 8 C.F.R. § 274a.13(d). This regulation provided that "[f]ailure to complete the adjudication within 90 days will result in the grant of an employment authorization document for a period not to exceed 240 days." 8 C.F.R. § 274a.13(d) (effective until Jan. 17, 2017). Like the <u>Cuccinelli</u> plaintiffs, Plaintiff submitted her petition before the regulation was repealed and filed her lawsuit after its repeal. <u>Cuccinelli</u>, 985 F.3d at 371. The Fourth Circuit held in <u>Cuccinelli</u> that "the repeal of 8 C.F.R. § 274a.13(d) properly applies to past conduct without impermissible retroactive effect," and, as such "the 90-day adjudication regulation does not apply to Plaintiff[]. As a result, Plaintiff[] cannot claim that the agency committed itself to adjudicate [her] work-authorization requests based on that regulation." 985 F.3d at 374. As such, the court finds that the former regulation, 8 C.F.R. § 274a.13(d), does not require the defendants to adjudicate Plaintiff's work authorization request.

---

[9] This binding precedent from the Fourth Circuit trumps the case law on which Plaintiff relies, namely <u>Solis v. Cissna</u>, CV 9:18-00083-MBS, 2019 WL 8219790, at *11 (D.S.C. July 11, 2019), in which the district court ordered USCIS to grant employment authorizations to the plaintiffs within 30 days of its order after a four-year delay in adjudication.

13

Because the defendants have "unreviewable discretion in their decision not to adjudicate Plaintiff's claim[, they] cannot have a 'clear duty to…act'" as required under the All Writs Act, and this court "need not discuss the other factors relevant to deciding a petition for a writ of mandamus" before dismissing this claim. Cuccinelli, 985 F.3d at 374 n.9.

In sum, "[t]he agency was not required—whether by statute, regulation, or anything else—to adjudicate [this] claim[] in the first place. So it is beyond [the court's] power to force the agency to act (let alone to act faster) under either the APA or the All Writs Act." Id. at 374. Plaintiff's claims as they relate to pre-waiting-list work authorization, must be dismissed.

## IV. CONCLUSION

For these reasons, the defendants' motion to dismiss, ECF No. 14, will be **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's claims regarding the delayed adjudication of her U-Visa petition will survive, but the court lacks jurisdiction to review her claims regarding her related request for employment authorization.

An appropriate order will be entered.

Entered: 09/10/2021

Michael F. Urbanski
Chief United States District Judge